DUFFY TRIAL, P.C.                                  A*TTORNEY FOR PLAINTIFFS*
PATRICK T. DUFFY
ATTY ID 92899
100 REGENCY DRIVE
AUDUBON, PA 19403
Patrick@DuffyTrial.com
(484) 250-4654
(610) 630-0210 (fax)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

|  |  |  |
|---|---|---|
| **VICKI YACULAK,** | : | |
| **CO-ADMINISTRATOR OF THE ESTATE** | : | |
| **OF BARTON LEWIS SELTMAN** | : | **Civil Action No.** |
| **2275 Broadmoor Road** | : | |
| **Pottstown, Pennsylvania 19464** | : | |
| | : | |
| **and** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **HOLLY LEE,** | : | |
| **CO-ADMINISTRATOR OF THE ESTATE** | : | |
| **OF BARTON LEWIS SELTMAN** | : | |
| **1239 East High Street** | : | |
| **Pottstown, Pennsylvania** | : | |
| | : | |
| **Plaintiffs,** | : | |
| **v.** | : | |
| | : | |
| **MONTGOMERY COUNTY, PENNSYLVANIA** | : | |
| **One Montgomery Plaza** | : | |
| **425 Swede Street** | : | |
| **Norristown, Pennsylvania, 19401** | : | |
| | : | |
| **and** | : | |
| | : | |
| **PRIMECARE MEDICAL, INC.** | : | |
| **3940 Locust Lane** | : | |
| **Harrisburg, Pennsylvania 17109** | : | |
| | : | |
| **and** | : | |
| | : | |
| **CREATIVE HEALTH SERVICES** | : | |
| **11 Robinson Street** | : | |
| **Pottstown, Pennsylvania 19464** | : | |

1

and                                                    :
                                                       :
**MATTHEW KAVALEK, MD**                                :
**60 Eagleville Road**                                 :
**Eagleville, Pennsylvania 19403**                     :
                                                       :
and                                                    :
                                                       :
**HANI ZAKI, MD**                                      :
**60 Eagleville Road**                                 :
**Eagleville, Pennsylvania 19403**                     :
                                                       :
and                                                    :
                                                       :
**ANGELA BAKER, PA-C,**                                :
**60 Eagleville Road**                                 :
**Eagleville, Pennsylvania 19403**                     :
                                                       :
and                                                    :
                                                       :
**ROBERT FINK, PMNHP,**                                :
**60 Eagleville Road**                                 :
**Eagleville, Pennsylvania 19403**                     :
                                                       :
and                                                    :
                                                       :
**JENA MECK, LSW**                                     :
**60 Eagleville Road**                                 :
**Eagleville, Pennsylvania 19403**                     :
                                                       :
and                                                    :
                                                       :
**JAIME BUTCHER, LSW**                                 :
**60 Eagleville Road**                                 :
**Eagleville, Pennsylvania 19403**                     :
                                                       :
and                                                    :
                                                       :
**SOPHIA DRENNEN, LSW**                                :
**60 Eagleville Road**                                 :
**Eagleville, Pennsylvania 19403**                     :
                                                       :
and                                                    :
                                                       :
**JENNIFER PAPP, LSW**                                 :
**60 Eagleville Road**                                 :

**Eagleville, Pennsylvania 19403**                    :
                                                      :
**and**                                               :
                                                      :
**JACQUELINE LOVELL, MHC, LSW**                       :
**60 Eagleville Road**                                :
**Eagleville, Pennsylvania 19403**                    :
                                                      :
**and**                                               :
                                                      :
**KRISTIN SPRINGMAN, RN**                             :
**60 Eagleville Road**                                :
**Eagleville, Pennsylvania 19403**                    :
                                                      :
**and**                                               :
                                                      :
**TAMIKA BOOKER, RN**                                 :
**60 Eagleville Road**                                :
**Eagleville, Pennsylvania 19403**                    :
                                                      :
**and**                                               :
                                                      :
**DONNALEE CURTIS, LPN**                              :
**60 Eagleville Road**                                :
**Eagleville, Pennsylvania 19403**                    :
                                                      :
**and**                                               :
                                                      :
**JASMIN NELSON, LPN**                                :
**60 Eagleville Road**                                :
**Eagleville, Pennsylvania 19403**                    :
                                                      :
**and**                                               :
                                                      :
**JENNIFER SQUIRE, LPN**                              :
**60 Eagleville Road**                                :
**Eagleville, Pennsylvania 19403**                    :
                                                      :
**and**                                               :
                                                      :
**THOMAS REECE, LPN**                                 :
**60 Eagleville Road**                                :
**Eagleville, Pennsylvania 19403**                    :
                                                      :
**and**                                               :
                                                      :

3

**LAURA ROMANO**                    :
**60 Eagleville Road**              :
**Eagleville, Pennsylvania 19403**  :
                                    :
**and**                             :
                                    :
**MEDICAL PROVIDER**                :
**JOHN/JANE DOES (1-10),**          :
                                    :
                                    :
                    **Defendants.** :
_____

## COMPLAINT

**NOW COMES** the plaintiffs, Vicki Yaculak and Holly Lee, Co-Administratrices of the Estate of Barton Lewis Seltman, through their attorney, Patrick T. Duffy, Esq., and as their complaint against the above-named defendants, says the following:

1.    This lawsuit arises from the death of Barton Lewis Seltman, 84 years old, who died on April 5, 2023, from an undiagnosed and untreated urinary tract infection which developed into urosepsis and resulted in several falls despite the decedent being in the custody of Montgomery County From November 29, 2023 through January 11, 2024 and under the continuous care of the Defendants who failed to recognize the cause of the decedent's declining condition and elevate his level of care to appropriate providers until it was too late to treat the decedent's condition and he succumbed to a combination of his sepsis, neck fractures and declining altered mental state in a nursing home.

2.    Barton Seltman was an United States Army veteran, a former Stowe, Montgomery County, Police Officer and head of security for Philadelphia Gear Company.

3.    He left behind three adult children, Barton Seltman Jr., Vicki Yakulak and Holly Lee plus numerous grandchildren, great grandchildren and other family and loved ones.

## PARTIES

4.    At all times material hereto, the plaintiff, Vicki Yaculak, was and is a citizen of the United States of America residing at 2275 Broadmoor Road, Pottstown, Pennsylvania 19464.

5.    At all times material hereto, the plaintiff, Holly Lee, was and is a citizen of the United States of America residing at 1239 East High Street, Pottstown, Pennsylvania 19464.

6.    Ms. Yaculak and Ms. Lee were appointed Co-Administratrices of the Estate of Barton Lewis Seltman on June 4, 2024, by the Register of Wills of Montgomery County Pennsylvania.

7.    Plaintiffs, bring this lawsuit as the Administratrices of the Estate of Barton Lewis Seltmann, on their own behalf and on behalf of all statutory beneficiaries.

8.    Plaintiff' decedent, Barton Lewis Seltmann, died on April 4, 2024, at the age of 84.

9.    At all times material hereto, the Defendant. Montgomery County, Pennsylvania is a municipality within the Commonwealth of Pennsylvania with an address of One Montgomery Plaza, 425 Swede Street, Norristown, Pennsylvania, 19401. At all times relevant hereto, Montgomery County owned and operated Montgomery County Correctional Facility ("MCCF") at 60 Eagleville Road, Eagleville, PA 19403, as well as Montgomery County Behavioral Health/Developmental Disabilities Department and operated through its agents, employees, vendors, agents and servants of MCCF, agents and servants of Montgomery County Behavioral Health/Developmental Disabilities Department and its contractors, PrimeCare Medical, Inc. and its employees and agents, and Creative Health Services and its employees and agents.

10.    At all times material hereto, defendant PrimeCare Medical, Inc., with an address of 3940 Locust Lane, Harrisburg, Pennsylvania 17109 was an active Pennsylvania corporation or other business entity that contracted with Montgomery County to provide medical care to the

inmates housed in the MCCF such as Seltmann.  Upon information and belief, at all relevant times, PrimeCare Medical, Inc. employed the Medical Defendants identified below.

11.    At all times material hereto, PrimeCare Medical, Inc. acted through its employees, agents, ostensible agents, workmen and servants, particularly those working at the MCCF in November, December and January, 2023/24.

12.    At all times material hereto, defendant Creative Health Services, with an address of 11 Robinson Street, Pottstown, Pennsylvania 19464 was an active Pennsylvania corporation or other business entity that contracted with Montgomery County to provide mental health care to the inmates housed in the MCCF such as Seltmann.  Upon information and belief, at all relevant times, Creative Health Services employed the Mental Health Defendants identified below.

13.    At all times material hereto, Creative Health Services acted through its employees, agents, ostensible agents, workmen and servants, particularly those working at the MCCF in November, December and January, 2023/24.

14.    MCCF established a partnership with Prime Care and the Montgomery County Behavioral Health / Developmental Disabilities Department to accomplish a team approach for planning and working with mental health clients who are identified and incarcerated in the Montgomery County Correctional Facility.  MCCF electronically communicates all inmate admissions to the Montgomery County Behavioral Health/Developmental Disabilities Department so they may identify those receiving mental health services.

15.    At all times material hereto the defendant, Matthew Kavalek, MD was a medical doctor specializing in family medicine who was working at Montgomery County Correctional Facility, acting under the color of law, and within in the course and scope of his employment

and/or agency with PrimeCare Medical, Inc and with supervisory power, control and responsibility for the medical/mental health care and treatment of inmates at that facility.

16.     At all times material hereto the defendant, Hani Zaki, MD was a medical doctor specializing in family medicine who was working at Montgomery County Correctional Facility, acting under the color of law, and within in the course and scope of his employment and/or agency with Creative Health Services and/or PrimeCare Medical, Inc and with supervisory power, control and responsibility for the medical/mental health care and treatment of inmates at that facility.

17.     At all times material hereto the defendant, Angela Baker, was a licensed Physician Assistant - Certified working at the MCCF and was, in that capacity, acting under the color of law in the course and scope of her employment an agent, employee and servant of PrimeCare Medical, Inc. with supervisory power, control and responsibility for the medical care and treatment of inmates, such as Seltmann, at that facility

18.     At all times material hereto the defendant, Robert Fink, PMNHD, was a psychiatric mental health nurse practitioner specializing in working at Montgomery County Correctional Facility, acting under the color of law, and within in the course and scope of his employment and/or agency with Creative Health Services and/or PrimeCare Medical, Inc and or Montgomery County and with supervisory power, control and responsibility for the medical/mental health care and treatment of inmates at that facility.

19.     At all times material hereto the defendant, Jena Meck, was a licensed social worker specializing in working at Montgomery County Correctional Facility, acting under the color of law, and within in the course and scope of his employment and/or agency with Creative Health Services and/or PrimeCare Medical, Inc and or Montgomery County and with

supervisory power, control and responsibility for the medical/mental health care and treatment of inmates at that facility.

20. At all times material hereto the defendant, Jaime Butcher, was a licensed social worker specializing in working at Montgomery County Correctional Facility, acting under the color of law, and within in the course and scope of his employment and/or agency with Creative Health Services and/or PrimeCare Medical, Inc and or Montgomery County and with supervisory power, control and responsibility for the medical/mental health care and treatment of inmates at that facility.

21. At all times material hereto the defendant, Sophia Drennan, was a licensed social worker specializing in working at Montgomery County Correctional Facility, acting under the color of law, and within in the course and scope of his employment and/or agency with Creative Health Services and/or PrimeCare Medical, Inc and or Montgomery County and with supervisory power, control and responsibility for the medical/mental health care and treatment of inmates at that facility.

22. At all times material hereto the defendant, Jennifer Papp, was a licensed social worker specializing in working at Montgomery County Correctional Facility, acting under the color of law, and within in the course and scope of his employment and/or agency with Creative Health Services and/or PrimeCare Medical, Inc and or Montgomery County and with supervisory power, control and responsibility for the medical/mental health care and treatment of inmates at that facility.

23. At all times material hereto the defendant, Jacqueline Lovell, was a mental health counselor specializing in working at Montgomery County Correctional Facility, acting under the color of law, and within in the course and scope of his employment and/or agency with Creative

Health Services and/or PrimeCare Medical, Inc and or Montgomery County and with supervisory power, control and responsibility for the medical/mental health care and treatment of inmates at that facility.

24.    At all times material hereto the defendant, Kristin Springman, was a licensed Registered Nurse working at the MCCF and was, in that capacity, acting under the color of law in the course and scope of her employment an agent, employee and servant of PrimeCare Medical, Inc., and/or Creative Health Services and/or Montgomery County with supervisory power, control and responsibility for the medical care and treatment of inmates, such as Seltmann, at that facility.

25.    At all times material hereto the defendant, Tamike Booker, was a licensed Registered Nurse working at the MCCF and was, in that capacity, acting under the color of law in the course and scope of her employment an agent, employee and servant of PrimeCare Medical, Inc., and/or Creative Health Services and/or Montgomery County with supervisory power, control and responsibility for the medical care and treatment of inmates, such as Seltmann, at that facility.

26.    At all times material hereto the defendant, Donnalee Curtis, was a licensed Practical Nurse working at the MCCF and was, in that capacity, acting under the color of law in the course and scope of her employment an agent, employee and servant of PrimeCare Medical, Inc. and/or Creative Health Services and/or Mongomery County with supervisory power, control and responsibility for the medical care and treatment of inmates, such as Seltmann, at that facility.

27.    At all times material hereto the defendant, Jasmine Nelson, was a licensed Practical Nurse working at the MCCF and was, in that capacity, acting under the color of law in

9

the course and scope of her employment an agent, employee and servant of PrimeCare Medical, Inc. and/or Creative Health Services and/or Mongomery County with supervisory power, control and responsibility for the medical care and treatment of inmates, such as Seltmann, at that facility.

28.     At all times material hereto the defendant, Jennifer Squire, was a licensed Practical Nurse working at the MCCF and was, in that capacity, acting under the color of law in the course and scope of her employment an agent, employee and servant of PrimeCare Medical, Inc. and/or Creative Health Services and/or Mongomery County with supervisory power, control and responsibility for the medical care and treatment of inmates, such as Seltmann, at that facility.

29.     At all times material hereto the defendant, Tomas Reece, was a licensed Practical Nurse working at the MCCF and was, in that capacity, acting under the color of law in the course and scope of her employment an agent, employee and servant of PrimeCare Medical, Inc. and/or Creative Health Services and/or Mongomery County with supervisory power, control and responsibility for the medical care and treatment of inmates, such as Seltmann, at that facility.

30.     At all times material hereto the defendant, Laura Romano, was working as a prison counselor at the MCCF and was, in that capacity, acting under the color of law in the course and scope of her employment an agent, employee and servant of PrimeCare Medical, Inc. and/or Creative Health Services and/or Mongomery County with supervisory power, control and responsibility for Seltmann at that facility.

31.     At all times relevant hereto defendant, Medical Providers John/Jane Does (1-10) were doctors, nurses or other medical providers working at MCCF as employees and/or agents of PrimeCare Medical, Inc and or Creative Health Services and/or Montgomery County.  Plaintiff

does not presently know the names of these defendants after conducting a reasonable search, including medical records provided.  Plaintiff expects to learn the names of these additional medical providers through formal discovery and will promptly take steps to substitute actual names for these fictitious names.

32.     At all relevant times, Montgomery County, Creative Health Services and PrimeCare Medical, Inc. were acting, or alternatively failed to act, by and through their employees, agents, and/or ostensible agents, who at all times relevant acting under the color of law and were acting within the course and scope of their employment, agency and/or ostensible agency.

## JURISDICTION AND VENUE

33.     This Court has jurisdiction of this action over all defendants pursuant to 42 U.S.C §1983 as well as 28 U.S.C. §1331.  This Court has jurisdiction over the pendant state tort law claims pursuant to 28 U.S.C. §1367(a).

34.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events and/or admissions giving rise to Plaintiff's claims took place in the Eastern District of Pennsylvania boundaries.

35.     This action is further brought directly under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded upon 28 U.S.C. 1346, 1331 and 1343 and directly under the United States Constitution.

36.     The amount in controversy exceeds the sum of One Hundred Fifty Thousand ($150,000.00) Dollars exclusive of interest and costs.

## FACTUAL ALLEGATIONS

37.    In or about October, 2023, Barton Lewis Seltmann was married and living with his wife of 35 plus years, Margaret, in the home Mr. Seltmann had personally built decades prior on family land in Pottstown, Pennsylvania.

38.    Around that time, Mr. Seltmann began to show some signs of mental decline during an ER visit for a respiratory issue.  During the hospitalization Mr. Seltmann became confused and agitated and required a response from the hospital's behavioral response team.  He was referred to a neurologist for further workup.

39.    On or about November 8, 2023, Mr. Seltmann was seen in consultation by neurologist Kelly Geary, DO.  The records show Mr. Seltman was still driving himself without issue and did not get lost in familiar surroundings.   He was alert and oriented to person place and time and after a complete examination, of Mr. Seltmann, Dr. Geary believed he had resolved in-hospital delirium and recommended a return visit in 4-6 months for dementia surveillance.

40.    Mr. Seltmann spent Thanksgiving, 2023 with his family with none of his family noting anything unusual about his behavior or appearance.

41.    Unfortunately, on October 28, 2023, Mr. Seltmann was in a physical altercation with his wife who died as a result of the altercation.  It is unclear as to what precipitated the altercation or what led to Mr. Seltmann's agitation and confusion.

42.    Mr. Seltmann was taken into police custody and was transported to Pottstown Hospital for a medical examination for incarceration clearance.  Mr. Seltmann was noted to be alert and oriented X4; easily followed commands; not ill tempered; cooperative; pleasant; talkative; very chatty and in no acute distress.

43.    A urinal sample was collected and was negative for any drugs or alcohol

44.     Cultures from the urine sample showed Mr. Seltmann had no bacteria and was not suffering from a urinary tract infection.

45.     Mr. Seltmann was discharged from Pottstown Hospital at 11:50 a.m. on Thursday, November 29, 2023, and transported by police to the Montgomery County Correctional Facility.

46.     At about 1:13 p.m. on November 29, 2023, Mr. Seltmann underwent an initial medical screening at MCCF by Ivette Riveria.

47.     Mr Seltmann was able to answer questions and relay historical information.  He was noted to be alert and oriented to person place and time. His physical appearance was documented as "appropriate."

48.     During the initial intake, Mr. Seltmann's hospitalization at Pottstown Hospital immediately prior to incarceration was noted as was his medications and doctors.  Mr. Seltmann executed a consent for treatment form and a disclosure form.

49.     Mr. Seltmann was noted to be in need of glasses but he was without them.

50.     Mr. Seltmann denied any history of resistant bacterial infections but advised he gets up three to four times per night to use the bathroom.

51.     Mr. Seltmann was placed on suicide watch and placed in the medical housing unit.  He was placed on gym and work restrictions and only permitted finger foods.  He was not given any clothing but rather only a heavy blanket.

52.     A mental health screening was performed by Jena Meck, LSW.

53.     Mr. Seltmann denied any previous suicide attempts and "adamantly" denied any suicide intent.

54.     Ms. Meck noted Mr. Seltmann to be "alert and oriented X4"; "cooperative"; "calm and relaxed"; "well groomed"; "trusting" and made "good eye contact."

13

55.     Mr. Seltmann's speech and mood were normal and his thought process linear. His memory of recent and remote events was intact.

56.     He was referred to psychiatry for mental health treatment.

57.     On December 1, 2023, Mr. Seltmann underwent a psychiatric evaluation by Hani Zaki, MD who noted Mr. Seltmann to "disorganized and confused" and only oriented to person. The doctor wanted to rule out dementia and the plan was to monitor.  He was referred to medical to determine the reason for the confusion.  Nurse Springman, security and ADON Thompson were notified of the need.

58.     At 5:11 p.m. on December 1, 2023, Mr. Seltmann was assessed by Kristin Springman who believed there were no concerns as Mr. Seltmann was oriented to person place and time and knew who the President was.

59.     On December 1, 2023, Mr. Seltmann's daughter, Plaintiff Vicki Yaculak called the prison counselor, Laura Romano requesting information.  Ms. Yaculak was told that because of Mr. Seltmann's charges and housing unit he was not permitted to have any visitors.  No information about Mr. Seltmann's condition was provided.

60.     Ms. Meck saw Mr. Seltman again on December 4, 2023, and the notes reflect that his condition had begun to deteriorate.  He was noted to be "disheveled" and "unkempt"; he was "withdrawn and restless."  His speech was now "soft" and he spoke with "paucity."  He appeared "fatigued."  Ms. Meck documented Mr. Seltmann was "minimally engaged."

61.     Ms. Meck saw Mr. Seltman again on December 5, 2023, to see if Mr. Seltmann could be cleared from MHU and transferred to the MAX unit.   Despite his deteriorating condition noted the day before, Mr. Seltmann was cleared by Ms. Mack to be transferred out of the MHU to J Block.

14

62.     On December 6, 2023, Ms. Yaculak again called counselor Romano requesting information on Mr. Seltmann and was provided no further information.

63.     On December 7, 2023, eight (8) days after his incarceration, Mr. Seltman was finally given a physical by Matthew Kavalek, MD.  Dr. Kavalek failed to note anything abnormal with Mr. Seltmann.  He specifically noted that his lower extremities were normal. He stated Mr. Seltmann was medically stable but ordered his medical records obtained from his providers and hospital admissions and to determine why he was seeing a neurologist as Mr Seltmann could not tell him the reason.

64.     On December 8, 2023, was brought from the J Block by the guards after it was noted that Mr Seltmann was seen on video trying to cut his wrists with a plastic butter knife.  He was evaluated by Jaime Butcher, LSW who placed him on daily suicide watch.   He was transferred back to the MHU.

65.     On December 9, 2023, Mr. Seltmann was seen by Jacqueline Lovell, MHC.  Ms. Lovell's noted Mr. Seltmann to be "disheveled/unkempt"; "bizarre"; made "limited eye contact"; "rigid"; "withdrawn"; "guarded"; "defensive"; "restless"; had "latent speech and spoke soft"; "judgement severely impaired"; "impulsive"; "depressed"; "constricted"; "thought blocking" and now had auditory and visual hallucinations. A 302 referral was completed and faxed to MCES for review.

66.     On December 10, 2023, Mr. Seltmann met with the criminal defense attorney hired by his family.  In pleadings filled in the criminal case, the attorney detailed the encounter for the court and noted:

> Undersigned counsel met with the client on December 10, 2023 at the Montgomery County Correction Facility after being retained.  During the initial encounter, Mr. Seltman was visibly and obviously not competent.  He came to the interview room stark naked and was not oriented to time.  He was unable to

provide a full account as to the circumstances which led to his arrest and kept speaking about his wife in the present tense and advising undersigned counsel about how much he will like his wife when he meets her.

67.    On December 11, 2023, Mr. Seltmann was evaluated by Jaime Butcher, LSW. Ms. Butcher noted Mr. Seltmann was "disheveled/unkempt"; made "limited eye contact"; was "tense"; "guarded"; "restless"; "anxious"; "rambling"; and had "limited insight of situation."

68.    PA-C Angela Baker also evaluated Mr. Seltmann on December 11, 2023 as a mew admission to medical unit requiring follow-up.  No concerns were raised and he was to be monitored weekly.

69.    Ms. Butcher referred Mr. Seltmann to psychiatry.

70.    On December 11, 2023, Mr. Seltmann's criminal attorney called and spoke with Laura Romano to discuss Mr. Seltmann's condition and presentation the day before.  No substantive information was provided.  The Attorney faxed over a current medication list from Mr. Seltmann's PCP to ensure the staff was aware of all of Mr. Seltmann's prescribed medications.   No mention or details of the knife cutting on December 8, 2023, were provided.

71.    On December 12, 2023, Mr. Seltman was seen by Dr. Zaki after Mr. Seltmann requested a visit and advised he was not ok.  He was noted to be disorganized and not oriented to time. No physical distress was noted, and Mr. Seltmann was counseled on the need to take his medications as prescribed.   He was diagnosed with unspecified Psychosis.

72.    That same day, Mr. Seltmann's case was discussed internally at the IDT meeting and a 302 Petition was filed due to the suicide attempt and because Mr. Seltmann presents as confused and disoriented.

73.    Montgomery County Emergency Services (MCES) recommended a forensic referral and Dr. Zaki advised a 304 Petition was to be sought.  Dr. Scordellis, the Vice President of Behavioral Services with PrimeCare was sent an email on the situation for review.

74.    Also on December 12, 2023, the records from Pottstown Hospital, Mr. Seltmann's PCP and cardiologist were received.   They were placed in the provider's bin for review.  There is no notation in the chart that these records were ever reviewed.

75.    On December 13, 2023, Mr. Seltmann was evaluated by Sophia Drennan, LSW. Ms. Drennan noted Mr. Seltmann to be "disheveled/unkempt"; made "no eye contact"; had "slumped posture;" was "withdrawn"; "mute" and was unable to evaluate his thought process/content, hallucinations, delusions and judgment due to his "noncompliance."

76.    On December 13, 2023, Ms. Yaculak again called counselor Romano requesting information on Mr. Seltmann and was given no further information and was again advised the prison policy prevented Mr. Seltmann from having any visitors.

77.    On December 14, 2023, Mr. Seltmann was seen in MHU triage by LPN Thomas Reece as he developed wounds on his right toes.

78.    On December 14, 2023, Mr. Seltmann was evaluated by Jennifer Papp, LSW.  He was naked and his dignity suit was on the ground.   Ms. Papp noted Mr. Seltmann to be "disheveled/unkempt"; made "no eye contact"; had "slumped posture;" was "withdrawn"; "mute" and was unable to evaluate his thought process/content, hallucinations, delusions and judgment due to his "noncompliance."

79.    On December 14, 2023, Dr. Zaki executed a 304 Petition to be filed with the Court.

80.     On December 15, 2023, Counselor Romano submitted the 304 Petition to the Court and a hearing date of December 22, 2023, was given.  A preadmission package was prepared and sent to Norristown State Hospital.

81.     On December 15, 2023, Jaime Butcher, LSW, attempted to see Mr. Seltmann but was told by the C.O. that Mr. Seltmann had fallen and was taken to the hospital.

82.     On December 18, 2023, plaintiff Vicki Yaculak again called counselor Romano to get information regarding the prison policies on visitation and asking that Mr. Seltmann receive help in calling her as he had not called despite an account having been opened and money placed on it.  No meaningful information was provided to Ms. Yaculak. She was not told her father had ben taken to the hospital.

83.     Mr. Seltmann was seen by Jena Meck on December 19, 2023, after his return from the hospital.  Mr. Seltmann was in a wheelchair and was withdrawn with latent speech.  He was described as "disheveled and unkempt"; "made "limited eye contact"; had "slumped posture"; was "withdrawn"; "distressed"; "fatigued"; "blunted"; had "severely impaired judgement" and "limited insight into his mental illness and situation."

84.     On December 19, 2023, Counselor Romano sent an expedited referral request to Norristown State Hospital for review.

85.     On December 19, 2023, plaintiff Vicki Yaculak again called counselor Romano to get information regarding the prison policies on visitation and asked that Mr. Seltmann receive help in calling her as he had not called despite an account having been opened and money placed on it.  No meaningful information was provided to Ms. Yaculak.  Ms. Yaculak advised she sent Ms. Seltmann a letter and requested the letter be read to him as he did not have his glasses and the prison did not provide any glasses.

18

86.    On December 19, 2023, Nurse Jennifer Squire was alerted by security that Mr. Seltmann was found in his cell with a foley catheter that had blood.  Security was not aware of the catheter and was told it was necessary, and Mr. Seltmann was to always be on camera for suicide prevention.

87.    PA-C Angela Baker saw Mr. Seltmann on December 20, 2023, following his return from the hospital for altered mental state.  He was confused and presented with aggression.  He had right foot cellulitis.  It was noted that Mr. Seltmann's condition could not be determined if acute or chronic.  A foley catheter was present for urinary retention.  A urology referral was recommended.  Mr. Seltmann was only oriented to self.  The catheter was removed. And he was noted to have extended fungal rash.  A urinal was ordered for urine output and medicine compliance ordered.

88.    On December 20, 2023, Mr. Seltmann was seen by Sophia Drennen, LSW who described him as "disheveled and unkempt"; made "limited eye contact"; had "slumped posture"; was "withdrawn"; "distressed"; "blunted"; and had "mild impaired judgement."   Mr. Seltman was naked on the edge of his bed.

89.    On December 21, 2023, Mr. Seltmann was seen by Dr. Zaki who noted he refused to engage and only noted Mr. Seltmann was encouraged to comply.

90.    On December 21, 2023, Mr. Seltmann was found to be incontinent with multiple urine puddles all over his cell floor by Donnalee Curtis, LPN

91.    On December 22, 2023, a 304 hearing was conducted without Mr. Seltmann present. The court granted the 304 Petition for up to 90 days.

92.    On December 22, 2023, Mr. Seltmann was seen in the MHU for right lower extremity wound care as his sore were red and open.

93.     Jennifer Papp, LSW saw Mr. Seltmann on December 22, 2023, and noted he was naked with his jumpsuit next to him.  She was unable to understand any of his verbal responses to questions.

94.     On December 23, 2023, it was noted by Kristin Springman, RN, that Mr. Seltmann's urinal was empty and there were no signs of him urinating.

95.     On December 23, 2023, Mr. Seltmann was seen by Tamika Booker, RN for wound care and a fungal rash which developed in Mr. Seltmann's groin area.  He was also to be monitored for urinary output but his urinal was again empty, but puddles of urine were noted on the floor.

96.     Sophia Drennen, LSW, saw Mr. Seltmann on December 23, 2023.  He was naked with his jumpsuit next to him. He appeared disheveled and was whispering.  No further workup or referrals were made.

97.     Mr. Seltman received wound care on December 24, 2023, for his toe wounds and the fungal rash.  No urine output was measured by Nurse Jennifer Squire as had been ordered.

98.     Jacqueline Lovell, MHC, saw Mr. Seltmann on December 25, 2023, and was difficult to understand at times.  He was cleared to use a Level 2 jumpsuit.

99.     Jennifer Squire, LPN, ordered a walker for Mr. Seltmann on December 25, 2023.

100.    Mr. Seltman received wound care on December 26, 2023, for his toe wounds and the fungal rash.  No urine output was measured by Nurse Donnalee Curtis as had been ordered.

101.    Jacqueline Lovell, MHC, saw Mr. Seltmann on December 26, 2023, and was sitting up in bed talking to the wall and was rambling.  No further workup or referrals were made.

102.    On December 27, 2023, medical was called to Mr. Seltmann's cell as security noted visible discoloration of decedent's posterior right leg.  A review of the camera footage noted the first signs of the discoloration on December 23, 2023, and the decedent's need to use both hands to raise his right leg when attempting to lay down.  The film also showed Mr. Seltmann using the bed to ambulate.

103.    This had gone on for days over the Christmas holiday without any medical staff or prison staff taking notice of the deteriorating condition of Mr. Seltmann.

104.    LPN Jasmin Nelson updated the task list for a provider review of Mr. Seltmann.

105.    Mr. Seltman received wound care on December 27, 2023, for his toe wounds and the fungal rash.  No urine output was measured by LPN Alexia Dawn as had been ordered.

106.    Jena Meck. LSW, saw Mr. Seltmann on December 27, 2023, as part of daily rounds.  Mr. Seltmann had his head in his hands and failed to make eye contact.  Mr. Seltmann refused to engage.  Supportive counseling was attempted.

107.    Dr. Kavalek, following notice that Mr. Seltmann was seen with extensive bruising and discoloration on his leg, saw the decedent on December 28, 2023.  His leg was warm and tender to the touch.  It was noted that the decedent could not be seen on film on December 27, 2023.  The cause was listed as undetermined and Dr. Kavalek only noted that they will continue to monitor.  Nor referrals were ordered and Mr. Seltman was not transferred to the hospital for a higher level of care.

108.    On December 28, 2023, Mr. Seltmann had to have his medications crushed and placed into Gatorade to ensure medication compliance.

109.    Robert Fink, PMHNP, was seen on rounds and was sitting on bed with a walker in front of him.  He was not answering any questions and randomly responded.  He was not oriented to place.  It was ordered that Mr. Seltmann would be seen again in one week.

110.    Mr. Seltman received wound care on December 29, 2023, for his toe wounds and the fungal rash.  No urine output was measured by LPN Sheila Trainor as had been ordered.

111.    Jaime Butcher, LSW, saw Mr. Seltmann on December 29, 2023, and noted he would continually lift his leg up and down while sitting on is bed.  He was speaking too softly to be heard.  Supportive counseling was provided.

112.    Counselor Laura Romano received an email from Norristown State Hospital advising the admission package for Mr. Seltmann was incomplete and additional information was required before he could be accepted.

113.    On December 30, 2023, it is noted Mr. Seltmann refused wound care and his medications and did not want to get up from lying down.

114.    On January 1, 2024, Mr. Seltmann was noted to have fallen and was only oriented x2.  Dr. Kavalek saw Mr. Seltmann was only oriented to self and a full evaluation could not be carried out as to his mental health due to his lack of orientation.  His speech was rambling and mostly incoherent. He still had right foot cellulitis. No further workup was ordered, and Mr. Seltmann was not referred for neuropsychological testing.

115.    Jacqueline Lovell, MHC, saw Mr. Seltmann on January 1, 2024, and noted he was difficult to understand and mumbling incoherently.  Supportive counseling was administered.

116.    Robert Fink, PMHNP, saw Mr. Seltmann on January 2, 2024, and noted he was not fully oriented to place and refused to answer questions.  He recommended an evaluation with a neurologist for dementia versus early Alzheimer's and was going to follow-up in a week.

117.    On January 3, 2024, Mr. Seltmann again fell in his cell causing a laceration to his scalp requiring staples to close.

118.    PA-C Angel Baker saw Mr. Seltman following his fall.  She administered staples but failed to send him to the hospital for imaging.  She noted Mr. Seltmann was eventually going to be transferred to Norristown State Hospital and if transfer not completed in a week, consultations would be placed.

119.    PA-C Baker also cancelled her order that Mr. Seltmann be seen for a urology consultation as she did not believe it was necessary any longer since his Foley catheter had been removed.

120.    Sophia Drennen, LSW, saw Mr. Seltmann on January 3, 2024.  He was standing at the wall and staring, unable to be redirected.  He was whispering.  Attempted supporting counseling but no further workup or referrals were made.

121.    Robert Fink, PMHNP, saw Mr. Seltmann on January 4, 2024, and documented his behaviors including looking under the bed for something. Mr. Fink again recommended a formal neurology exam and requested an application to Norristown State Hospital evaluation.  He was to follow up in one week.

122.    Mr. Seltman received wound care on January 5, 2024, for his toe wounds and the fungal rash.  No urine output was measured by RN Kristin Springman as had been ordered.

123.    Jaime Butcher, LSW saw Mr. Seltmann on January 5, 2024, who refused to verbally engage. Supportive counseling was attempted.

124.    Mr. Seltman received wound care on January 6, 2024, for his toe wounds and the fungal rash.  No urine output was measured by RN Kristin Springman as had been ordered.

125.    Mr. Seltman received wound care on January 8, 2024, for his toe wounds and the fungal rash.  No urine output was measured by LPN Thomas Reece as had been ordered.

126.    Jena Meck, LSW, saw Mr. Seltmann on January 8, 2024, and was noted to be sitting on his bed softly talking to himself and refused to engage Ms. Meck.  Supportive counseling was attempted.

127.    Mr. Seltman received wound care on January 9, 2024, for his toe wounds and the fungal rash.  No urine output was measured by LPN Donnalee Curtis as had been ordered.

128.    Jennifer Papp, LSW, saw Mr. Seltmann on January 9, 2024 as he presented to the MHU office via walker, appearing confused and was rambling.  Supportive counseling was provided.

129.    Robert Fink, PMHNP, also saw Mr. Seltmann on January 9, 2024, Mr Fink again requested a formal neurological evaluation and documented he would follow up in one week.

130.    On January 11, 2024, Mr. Seltmann was transferred emergently via Lower Providence EMS to Einstein Montgomery County Hospital for failure to thrive and a body temperature of 86.5.  It was noted that he was last well known over 24 hours prior.  He was bradycardic and hyposensitive. He had an altered mental status and suffered from hyperthermia. Sores were present on both feet.

131.    It was determined that Mr. Seltman was suffering from sepsis as a result of a urinary tract infection and had an acute cervical neck fracture.  He was retaining over 1600 mL of urine.

132.    Due to the neck fracture, Mr. Seltmann was transferred to Einstein Philadelphia. Where he remained until February 9, 2024.  During his hospitalization, Mr. Seltmann required

tube feeding and a central line catheter for antibiotics to treat his sepsis. Ultimately a PEG tube was surgically placed.

133.    On January 26, 2024, Mr. Seltmann's attending doctor testified before the Montgomery County Orphans' Court as to Mr. Seltmann's condition. The testimony from Dr. Jay Strain, MD revealed Mr. Seltmann was unable to communicate and make any medical decisions for himself. His medical team believed his condition resulted from a combination of the urosepsis, neck fracture and cognitive degeneration. Dr. Strain testified that Mr. Seltmann would never be able to return to his previous state.

134.    The Orphans Court appointed a professional guardian to make medical decisions for Mr. Seltmann.

135.    On February 9, 2024, Mr. Seltmann was transferred to Elkins Crest Health and Rehabilitation Center where he passed away on April 4, 2024, from complications of the untreated sepsis and neck fracture.

136.    Mr. Seltmann spent the final four months of his life suffering from un undiagnosed and untreated urinary tract infection which exhibited itself in multiple documented ways including increased change in mental status, numerous falls, urinary incontinence, reduced urine output, delirium, delusion, hallucinations, alter speech and a variety of other medical conditions.

137.    No workup was done to rule out a UTI.

138.    No defendant reached out to the decedent's family to ask questions about his prior medical history, normal mental status, experience with UTIs despite the decedent's daughter having called the prison on numerous occasions.

139.    The policy of the prison to prevent visits for patients in the MHU and facing the charges which Mr. Seltmann had prevented a family member from alerting his medical providers and the prison staff to the dire change in Mr. Seltmann's condition.

140.    Despite the obvious signs and symptoms indicating worsening progression of his condition, Mr. Seltmann was denied adequate medical care and intervention which allowed his condition to worsen, him to become septic, multiple falls causing a neck fracture and his condition to develop into a state where it was irreversible and no further care could prevent his death.

141.    The prison and medical staff at the prison delayed elevating his care, securing required consultations, ordering testing, including uranalysis, in the hopes Mr. Seltmann would be transferred to Norristown State Hospital and they would become responsible for his care.

142.    Defendants made a calculated decision to withhold timely medical care to save money until Mr. Seltmann's care became the responsibility of Norristown State Hospital.

143.    Despite the obvious signs and symptoms, the decedent was exhibiting his right to proper medical care and intervention was denied.

144.     Defendants owed a duty to the Plaintiff to provide adequate, proper and necessary care.

145.    Defendant, Matthew Kavalek, MD, owed the Plaintiffs' decedent a duty of care to use that degree of care and skill which a reasonably competent Medical Doctor would exercise in similar practice and acting in similar circumstances.

146.    Defendant, Matthew Kavalek, MD, failed to perform his function and duty to the Plaintiffs' decedent as a Medical Doctor within acceptable standards of care by failing to recognize and act on the Plaintiffs' decedent's obvious signs and symptoms of a worsening and

deteriorating condition and failing to recognize that his altered mental state was a result of his systematic infection and ensure that Plaintiffs' decedent obtained prompt, adequate, proper and necessary medical care, and attention, and that the level of care for the Plaintiffs' decedent was elevated and referred to appropriate facilities and expertise in an appropriate timeframe.

147.    Defendant, Hani Zaki, MD, owed the Plaintiffs' decedent a duty of care to use that degree of care and skill which a reasonably competent Medical Doctor would exercise in similar practice and acting in similar circumstances.

148.    Defendant, Hani Zaki, MD, failed to perform his function and duty to the Plaintiffs' decedent as a Medical Doctor within acceptable standards of care by failing to recognize and act on the Plaintiffs' decedent's obvious signs and symptoms of a worsening and deteriorating condition and failing to recognize that his altered mental state was a result of his systematic infection and ensure that Plaintiffs' decedent obtained prompt, adequate, proper and necessary medical care, and attention, and that the level of care for the Plaintiffs' decedent was elevated and referred to appropriate facilities and expertise in an appropriate timeframe.

149.    Defendant, Angela Baker, PA-C, owed the Plaintiffs' decedent a duty of care to use that degree of care and skill which a reasonably competent Physician's Assistant-Certified would exercise in similar practice and acting in similar circumstances.

150.    Defendant, Angela Baker, PA-C, failed to perform her function and duty to the Plaintiffs' decedent as a certified physician's assistant within acceptable standards of care by failing to recognize and act on the Plaintiffs' decedent's obvious signs and symptoms of a worsening and deteriorating condition and failing to recognize that his altered mental state was a result of his systematic infection and ensure that Plaintiffs' decedent obtained prompt, adequate, proper and necessary medical care, and attention, and that the level of care for the Plaintiffs'

decedent was elevated and referred to appropriate facilities and expertise in an appropriate timeframe.

151.    Defendant, Robert Fink, owed the Plaintiffs' decedent a duty of care to use that degree of care and skill which a reasonably competent psychiatric mental health nurse practitioner would exercise in similar practice and acting in similar circumstances.

152.    Defendant, Robert Fink, failed to perform her function and duty to the Plaintiffs' decedent as a psychiatric mental health nurse practitioner within acceptable standards of care by failing to recognize and act on the Plaintiffs' decedent's obvious signs and symptoms of a worsening and deteriorating condition and failing to recognize that his altered mental state was a result of his systematic infection and ensure that Plaintiffs' decedent obtained prompt, adequate, proper and necessary medical care, and attention, and that the level of care for the Plaintiffs' decedent was elevated and referred to appropriate facilities and expertise in an appropriate timeframe.

153.    Defendant, Jena Meck, owed the Plaintiffs' decedent a duty of care to use that degree of care and skill which a reasonably competent license social worker would exercise in similar practice and acting in similar circumstances.

154.    Defendant, Jena Meck, failed to perform her function and duty to the Plaintiffs' decedent as a license social worker within acceptable standards of care by failing to recognize and act on the Plaintiffs' decedent's obvious signs and symptoms of a worsening and deteriorating condition and failing to recognize that his altered mental state was a result of his systematic infection and ensure that Plaintiffs' decedent obtained prompt, adequate, proper and necessary medical care, and attention, and that the level of care for the Plaintiffs' decedent was elevated and referred to appropriate facilities and expertise in an appropriate timeframe.

155. Defendant, Jaime Bucher, owed the Plaintiffs' decedent a duty of care to use that degree of care and skill which a reasonably competent license social worker would exercise in similar practice and acting in similar circumstances.

156. Defendant, Jaime Buthcher, failed to perform her function and duty to the Plaintiffs' decedent as a license social worker within acceptable standards of care by failing to recognize and act on the Plaintiffs' decedent's obvious signs and symptoms of a worsening and deteriorating condition and failing to recognize that his altered mental state was a result of his systematic infection and ensure that Plaintiffs' decedent obtained prompt, adequate, proper and necessary medical care, and attention, and that the level of care for the Plaintiffs' decedent was elevated and referred to appropriate facilities and expertise in an appropriate timeframe.

157. Defendant, Sophia Drennen, owed the Plaintiffs' decedent a duty of care to use that degree of care and skill which a reasonably competent license social worker would exercise in similar practice and acting in similar circumstances.

158. Defendant, Sophia Drennen, failed to perform her function and duty to the Plaintiffs' decedent as a license social worker within acceptable standards of care by failing to recognize and act on the Plaintiffs' decedent's obvious signs and symptoms of a worsening and deteriorating condition and failing to recognize that his altered mental state was a result of his systematic infection and ensure that Plaintiffs' decedent obtained prompt, adequate, proper and necessary medical care, and attention, and that the level of care for the Plaintiffs' decedent was elevated and referred to appropriate facilities and expertise in an appropriate timeframe.

159. Defendant, Jennifer Papp, owed the Plaintiffs' decedent a duty of care to use that degree of care and skill which a reasonably competent license social worker would exercise in similar practice and acting in similar circumstances.

160.    Defendant, Jennifer Papp, failed to perform her function and duty to the Plaintiffs' decedent as a license social worker within acceptable standards of care by failing to recognize and act on the Plaintiffs' decedent's obvious signs and symptoms of a worsening and deteriorating condition and failing to recognize that his altered mental state was a result of his systematic infection and ensure that Plaintiffs' decedent obtained prompt, adequate, proper and necessary medical care, and attention, and that the level of care for the Plaintiffs' decedent was elevated and referred to appropriate facilities and expertise in an appropriate timeframe.

161.    Defendant, Jacqueline Lovell, owed the Plaintiffs' decedent a duty of care to use that degree of care and skill which a reasonably mental health counselor would exercise in similar practice and acting in similar circumstances.

162.    Defendant, Jacqueline Lovell, failed to perform her function and duty to the Plaintiffs' decedent as a mental health counselor within acceptable standards of care by failing to recognize and act on the Plaintiffs' decedent's obvious signs and symptoms of a worsening and deteriorating condition and failing to recognize that his altered mental state was a result of his systematic infection and ensure that Plaintiffs' decedent obtained prompt, adequate, proper and necessary medical care, and attention, and that the level of care for the Plaintiffs' decedent was elevated and referred to appropriate facilities and expertise in an appropriate timeframe.

163.    Defendant, Kristin Springman, owed the Plaintiffs' decedent a duty of care to use that degree of care and skill which a reasonably registered nurse would exercise in similar practice and acting in similar circumstances.

164.    Defendant, Kristin Springman, failed to perform her function and duty to the Plaintiffs' decedent as a registered nurse within acceptable standards of care by failing to recognize and act on the Plaintiffs' decedent's obvious signs and symptoms of a worsening and

deteriorating condition and failing to recognize that his altered mental state was a result of his systematic infection and ensure that Plaintiffs' decedent obtained prompt, adequate, proper and necessary medical care, and attention, and that the level of care for the Plaintiffs' decedent was elevated and referred to appropriate facilities and expertise in an appropriate timeframe.

165.    Defendant, Tamika Booker, owed the Plaintiffs' decedent a duty of care to use that degree of care and skill which a reasonably registered nurse would exercise in similar practice and acting in similar circumstances.

166.    Defendant, Tamika Booker, failed to perform her function and duty to the Plaintiffs' decedent as a registered nurse within acceptable standards of care by failing to recognize and act on the Plaintiffs' decedent's obvious signs and symptoms of a worsening and deteriorating condition and failing to recognize that his altered mental state was a result of his systematic infection and ensure that Plaintiffs' decedent obtained prompt, adequate, proper and necessary medical care, and attention, and that the level of care for the Plaintiffs' decedent was elevated and referred to appropriate facilities and expertise in an appropriate timeframe.

167.    Defendant, Tamika Booker, owed the Plaintiffs' decedent a duty of care to use that degree of care and skill which a reasonably registered nurse would exercise in similar practice and acting in similar circumstances.

168.    Defendant, Tamika Booker, failed to perform her function and duty to the Plaintiffs' decedent as a registered nurse within acceptable standards of care by failing to recognize and act on the Plaintiffs' decedent's obvious signs and symptoms of a worsening and deteriorating condition and failing to recognize that his altered mental state was a result of his systematic infection and ensure that Plaintiffs' decedent obtained prompt, adequate, proper and

necessary medical care, and attention, and that the level of care for the Plaintiffs' decedent was elevated and referred to appropriate facilities and expertise in an appropriate timeframe.

169.    Defendant, Donnalee Curtis, owed the Plaintiffs' decedent a duty of care to use that degree of care and skill which a reasonably licensed practical nurse would exercise in similar practice and acting in similar circumstances.

170.    Defendant, Donnalee Curtis, failed to perform her function and duty to the Plaintiffs' decedent as a license practical nurse within acceptable standards of care by failing to recognize and act on the Plaintiffs' decedent's obvious signs and symptoms of a worsening and deteriorating condition and failing to recognize that his altered mental state was a result of his systematic infection and ensure that Plaintiffs' decedent obtained prompt, adequate, proper and necessary medical care, and attention, and that the level of care for the Plaintiffs' decedent was elevated and referred to appropriate facilities and expertise in an appropriate timeframe.

171.    Defendant, Jasmin Nelson, owed the Plaintiffs' decedent a duty of care to use that degree of care and skill which a reasonably licensed practical nurse would exercise in similar practice and acting in similar circumstances.

172.    Defendant, Jasmin Nelson, failed to perform her function and duty to the Plaintiffs' decedent as a license practical nurse within acceptable standards of care by failing to recognize and act on the Plaintiffs' decedent's obvious signs and symptoms of a worsening and deteriorating condition and failing to recognize that his altered mental state was a result of his systematic infection and ensure that Plaintiffs' decedent obtained prompt, adequate, proper and necessary medical care, and attention, and that the level of care for the Plaintiffs' decedent was elevated and referred to appropriate facilities and expertise in an appropriate timeframe.

173.    Defendant, Jennifer Squire, owed the Plaintiffs' decedent a duty of care to use that degree of care and skill which a reasonably licensed practical nurse would exercise in similar practice and acting in similar circumstances.

174.    Defendant, Jennifer Squire, failed to perform her function and duty to the Plaintiffs' decedent as a license practical nurse within acceptable standards of care by failing to recognize and act on the Plaintiffs' decedent's obvious signs and symptoms of a worsening and deteriorating condition and failing to recognize that his altered mental state was a result of his systematic infection and ensure that Plaintiffs' decedent obtained prompt, adequate, proper and necessary medical care, and attention, and that the level of care for the Plaintiffs' decedent was elevated and referred to appropriate facilities and expertise in an appropriate timeframe.

175.    Defendant, Thomas Reece, owed the Plaintiffs' decedent a duty of care to use that degree of care and skill which a reasonably licensed practical nurse would exercise in similar practice and acting in similar circumstances.

176.    Defendant, Thomas Reece, failed to perform her function and duty to the Plaintiffs' decedent as a license practical nurse within acceptable standards of care by failing to recognize and act on the Plaintiffs' decedent's obvious signs and symptoms of a worsening and deteriorating condition and failing to recognize that his altered mental state was a result of his systematic infection and ensure that Plaintiffs' decedent obtained prompt, adequate, proper and necessary medical care, and attention, and that the level of care for the Plaintiffs' decedent was elevated and referred to appropriate facilities and expertise in an appropriate timeframe.

177.    Defendant, Laura Romano, owed the Plaintiffs' decedent a duty of care to use that degree of care and skill which a reasonably prison counselor would exercise in similar practice and acting in similar circumstances.

178.    Defendant, Laura Romano, failed to perform her function and duty to the Plaintiffs' decedent as a prison counselor within acceptable standards of care by failing to recognize and act on the Plaintiffs' decedent's obvious signs and symptoms of a worsening and deteriorating condition and failing to recognize that his altered mental state was a result of his systematic infection and ensure that Plaintiffs' decedent obtained prompt, adequate, proper and necessary medical care, and attention, and that the level of care for the Plaintiffs' decedent was elevated and referred to appropriate facilities and expertise in an appropriate timeframe.

179.    Defendants, Medical Providers John/Jane Doe (1-10) owed the Plaintiffs' decedent a duty of care to use that degree of care and skill which a reasonably competent medical professional would exercise in similar practice and acting in similar circumstances.

180.    Defendants, Medical Providers John/Jane Doe (1-10) failed to perform their function and duty to the Plaintiffs' decedent within acceptable standards of care by failing to recognize and act on the Plaintiffs' decedent's obvious signs and symptoms of a worsening infected pressure sore and ensure that Plaintiffs' decedent obtained prompt, adequate, proper and necessary medical care and attention and that the level of care for the Plaintiffs' decedent was elevated and referred to appropriate facilities and expertise in an appropriate timeframe.

181.    Defendants PrimeCare Medical, Inc. and/or Creative Health Services and/or Montgomery County employed Defendants Kavalek, Zaki, Baker, Fink, Meck, Butcher, Drennan, Papp, Lovell, Springman, Booker, Curtis, Nelson, Squire, Reece, Romano and John/Jane Does (1-10) at all times and these Defendants treated and/or failed to treat the Plaintiffs' decedent appropriately under the applicable standard of care while acting within the course and scope of their employment with PrimeCare Medical, Inc. and/or Creative Health

Services and/or Montgomery County who are vicariously liable for the Defendants' actions and of failures to act.

182.    As a direct and proximate result of the actions and inactions of the Defendants the Plaintiffs' decedent was denied prompt, adequate, proper and necessary medical care, suffered the resultant worsening deterioration of his condition to the point he was permanently and forever injured as his sepsis was allowed to go untreated resulting in falls, factures, organ failure and ultimately death.

**COUNT I**
**VIOLATION OF CIVIL RIGHTS (EIGHTH, FIFTH and FOURTEENTH AMENDMENTS)**
**PLAINTIFFS v. IDENTIFIED DEFENDANTS**

183.    Plaintiffs hereby incorporate the above paragraphs 1 through 182 above as if same were fully set forth herein.

184.    At all relevant times, Defendants, acting under the color of law, were deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment's ban on cruel and unusual punishment.

185.    The Defendants had an obligation to provide prompt, adequate, proper and necessary medical care and equipment to the Plaintiffs' decedent as a pretrial detainee in their care and custody.

186.    The Plaintiffs' decedent exhibited signs and symptoms of, and in fact had, a serious medical need for prompt, adequate, proper and necessary medical treatment.

187.    The Defendants knew of the Plaintiffs' decedent's need for such treatment.

188.    The knowledge that the Plaintiffs' decedent was in need of such treatment was made obvious by the onset of symptoms described above.

189.    For minutes, hours, days and weeks, all Defendants possessed actual knowledge of Plaintiffs' decedent's serious medical condition and deterioration of same.

190.    Despite such knowledge, Defendants ignored, if not exacerbated, Plaintiffs' decedent's worsening medical condition and failed to take the necessary steps to ensure the proper level of care and take appropriate precautions and interventions, such as referring to specialists with required expertise and training, elevating his level of care, ordering testing including a uranalysis and sending Plaintiffs' decedent to the hospital after his numerous falls.

191.    Defendants knew that their actions and inactions were enhancing the risk of harm to the Plaintiffs' decedent.

192.    Defendants' failure to treat, monitor, address Plaintiff's serious and legitimate medical needs and timely elevate the level of care given his declining state transcended contemporary standards of decency, are shocking to the conscience of mankind, and violate his Eighth Amendment right to be free from cruel and unusual punishment.

193.    Defendants' unreasonable, egregious, malicious, willful, and intentional acts and omissions constitute a deliberate indifference and callous disregard for Plaintiffs' decedent's life, safety and well-being.

194.    The delay in affording the Plaintiffs' decedent adequate, proper, and necessary medical treatment had a detrimental and permanent effect on the Plaintiffs' decedent.

195.    As a direct and proximate result of Defendants' unlawful and unconstitutional behavior, Plaintiffs' decedent suffered serious bodily harm requiring multiple surgeries and prolonged hospitalization and care and resultant permanent injuries and death.

196.    Defendants, with knowledge of the Plaintiffs' decedent's medical needs, and/or with deliberate indifference to the Plaintiffs' decedent's medical needs, acted or failed to act in

such a way as to deprive the Plaintiff of adequate, proper, and necessary medical care thus endangering the Plaintiffs' decedent's medical health and wellbeing. Such acts and/or omissions of the Defendants were violative of the plaintiffs' decedent's rights secured under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

197.    Defendants, with knowledge of the Plaintiffs' decedent's medical needs, and/or with deliberate indifference to such medical needs acted or failed to act in such a manner as to prevent Plaintiffs' decedent from obtaining needed medical treatment and care and/or to prevent needed medical treatment and care from reaching the Plaintiffs' decedent thus endangering the Plaintiffs' decedent's health and wellbeing. Such acts and/or omissions of the Defendants were violative of the Plaintiffs' decedent's rights secured under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

198.    Defendants with knowledge of Plaintiffs' decedent's medical needs have a duty under the Fifth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution to provide needed medical care to inmates in conformity with the standards for delivery of such medical care in the Commonwealth of Pennsylvania as a whole.

199.    Defendants, with knowledge of Plaintiffs' decedent's medical needs, or with deliberate indifference to such medical needs, acted or failed to act in such a way as to provide medical care to Plaintiffs' decedent in conformity with the standard for delivery of such medical care in the Commonwealth of Pennsylvania as a whole and did in fact provide medical care which did not meet such standards thus endangering the Plaintiffs' decedent's health and well-being in violation of rights secured to Plaintiffs' decedent by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

200.    Defendants, knowing of the medical needs of Plaintiff s' decedent had a duty under the Fifth, Eighth, and Fourteenth Amendments of the Constitution of the United States to instruct, supervise and train their employees and agents to assure the delivery of medical care to Plaintiff s' decedent which is consistent with the standards of medical care in the Commonwealth of Pennsylvania as a whole.

201.    Defendants, knowing of the medical needs of Plaintiff s' decedent or with deliberate indifference to such needs, have failed to instruct, supervise and train their employees and agents in such a manner as to assure the delivery of medical care to Plaintiff s' decedent which is consistent with the standards of medical care in the Commonwealth of Pennsylvania as a whole thus endangering the Plaintiffs' decedent's health and well-being in violation of rights secured to Plaintiffs' decedent and members of the Plaintiffs' decedent's class by the Fifth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution.

202.    The Defendants' above-mentioned actions and/or omissions were committed under color of law.

203.    As a direct and proximate result of the negligence, carelessness, recklessness and deliberate indifference of the identified Defendants, the Plaintiffs' decedent has suffered severe, painful and permanent injuries, disabilities and death.

204.    As a further result of the above negligence, carelessness, recklessness and deliberate indifference of the identified Defendants, the Plaintiffs' decedent has incurred and various expenses for medicine and medical care in and about an effort to control his injuries and symptoms.

205.    As a further result of the above negligence, carelessness, recklessness and deliberate indifference of the identified Defendants, the Plaintiffs' decedent has been prevented

from attending to his usual duties, activities, occupations and avocations and a severe loss of his earning and earning capacity and power and may suffer same permanently.

WHEREFORE Plaintiffs, hereby demands judgment against the above named individual Defendants, jointly and severally for compensatory and punitive damages in excess of the jurisdictional limit of $150,000.00 plus interest, costs, attorney fees and such other relief as the court may deem appropriate.

## COUNT II
## VIOLATION OF CIVIL RIGHTS (MONELL CLAIMS)
## PLAINTIFFS v. MONTGOMERY COUNTY, PRIMECARE MEDICAL, INC. and CREATIVE HEALTH SERVICES

206.    Plaintiff hereby incorporates the above paragraphs 1 through 205 above as if same were fully set forth herein.

207.    The violation of Plaintiffs' decedent's constitutional rights as set forth above were directly and proximately caused by the deliberate indifference of Montgomery County, PrimeCare Medical, Inc. and Creative Health Services to the need for hiring, training, supervision, investigation, monitoring and/or discipline with respect to the provisions of specialized medical care to inmates such as Plaintiffs' decedent, under their custody and control.

208.    The violations of Plaintiffs' decedent's constitutional rights as set forth above were directly and proximately caused by their encouragement, ratification of, and deliberate indifference of the Montgomery County, PrimeCare Medical, Inc. and Creative Health Services to the policies and practices of their agents and employees of refusing, delaying, interfering with, or negligently providing timely and appropriate medical care and treatment to those in special need like Plaintiffs' decedent.

209.    The violations of Plaintiffs' decedent's constitutional rights as set forth above were directly and proximately caused by the abject failure of Montgomery County, PrimeCare

39

Medical, Inc and Creative Health Services with deliberate indifference, to develop, implement, update, and/or enforce policies and practices to ensure inmates like Plaintiffs' decedent received timely, necessary, and appropriate medical car for serious medical illnesses and critical life saving measures.

210.    Montgomery County, PrimeCare Medical, Inc. and Creative Health Services knew or certainly should have known of the need to improve and correct failed hiring, training, supervision, investigation, monitoring, discipline, policies, and practices by virtue of, the need for policies and procedure and that the denial of visits between inmates in the MHU and their family deprived of the opportunity for those with the best knowledge of a prisoner's baseline condition to alert those of any changes in the condition.

211.    Montogomery County, PrimeCare and Creative Health should have addressed hiring vacancies and ensured proper staffing such that the specialized medical needs of inmates with disabilities like the Plaintiffs' decedent were met and that proper equipment was available so that someone like Plaintiffs' decedent would not decompensate to the point that medical intervention could reverse the permanent damage to the Plaintiffs' decedent.

212.    The above referenced failure proximately caused Plaintiff's serious bodily injuries and death in that they directly and in natural and continuous sequence produced, contributed substantially, or enhanced such injuries.

213.    The aforementioned acts and/or omissions constitute willful and wanton misconduct in disregard of the rights, health, well-being and safety of Plaintiffs' decedent to his detriment.

WHEREFORE Plaintiffs hereby demand judgment against the above named individual Defendants, jointly and severally for compensatory and punitive damages in excess of the jurisdictional limit of $150,000.00 plus interest, costs, attorney fees and such other relief as the court may deem appropriate.

## COUNT III
## MEDICAL NEGLIGENCE (STATE LAW)
## PLAINTIFFS v. MEDICAL/MENTAL HEALTH DEFENDANTS

214.    Plaintiffs hereby incorporate the above paragraphs 1 through 213 above as if same were fully set forth herein.

215.    At all relevant times, the Medical Defendants were, upon information and belief, licensed to practice medicine and administer mental health treatment in the Commonwealth of Pennsylvania, and had a duty to comply with generally accepted medical standards of care in their medical treatment of Plaintiffs' decedent.

216.    The Medical/Mental Health Defendants violated their duty of care to Plaintiffs' decedent and were careless, negligent, and reckless in the following respects:

a.    Failure to properly evaluate the Plaintiffs' decedent upon admission and develop an appropriate plan of care given Plaintiffs' decedent's medical needs and conditions;

b.    Failure to provide prophylactic regimen;

c.    Failure to recognize the signs and symptoms of a worsening and deteriorating mental health;

d.    Failure to recognize the signs and symptoms of  Plaintiffs' decedent's systematic infection;

41

e.  Failure to timely elevate the level of care provided Plaintiffs' decedent;

f.  Failure to timely consult appropriate experts;

g.  Failure to timely transfer Plaintiffs' decedent to the hospital;

h.  Failure to prescribe and/or administer antibiotics for UTI;

i.  Failure to properly and effectively communicate amongst Plaintiffs' decedent medical providers as to the worsening condition of Plaintiff.

j.  Failure to heed the Plaintiffs' decedent's deteriorating condition;

k.  Failure to heed the Plaintiffs' decedent's family's complaints and provide an update as to his deteriorating condition;

l.  Failure to timely and accurately recognize, diagnose and treat Plaintiffs' decedent's medical condition;

m.  Failure to implement and maintain an intense and appropriate treatment plan to minimize the risk of Plaintiffs' decedent's deterioration;

n.  Failure to timely and appropriately prescribe and administer necessary medications;

o.  Failure to provide necessary, complete, and correct medical information to other medical professionals caring for Plaintiffs' decedent about the care he required and/or was provided;

p.  Failure to timely appreciate the grave danger Plaintiffs' decedent was in and take seriously his deterioration;

q.  Failure to timely appreciate Plaintiffs' decedent's change in condition;

r.  Failure to heed and appropriately respond to Plaintiffs' decedent's family's request for medical care;

s.  Entrusting Plaintiffs' decedent's care to individual(s) who it should have known would perform his/her/their duties in a negligent and/or reckless manner;

t.  Failing to promptly and quickly have Plaintiffs' decedent transferred to an appropriate facility which could provide the level of care required;

u.  Failing to pursue 5b transfer to Laurel Height Prison, a facility equipped to properly care for Plaintiffs' decedent;

v.  Prioritizing profits over patients and delaying necessary and required consultations, including consultations with a neurologist and urologist, hoping Plaintiffs' decedent would be transferred to Norristown State Hospital and become their responsibility.

217.  The Medical/Mental Health Defendants' violations of their duty of care, in reckless and wanton disregard for Plaintiffs' decedent's safety and well-being, increased the risk of harm to Plaintiffs' decedent and was a direct and proximate cause and substantial factor in bringing about Plaintiffs' decedent's serious bodily injuries and death.

218.  To the extent that the individual Medical/Mental Health Defendants were acting as employees, agents and/or ostensible agents of Montgomery County, PrimeCare Medical, Inc. and/or Creative Health Services acting within the course and scope of their employment and/or agency, Montgomery County, PrimeCare and Creative Health are vicariously liable to Plaintiffs.

WHEREFORE Plaintiffs hereby demand judgment against the above named individual Defendants, jointly and severally for compensatory and punitive damages in excess of the jurisdictional limit of $150,000.00 plus interest, costs, attorney fees and such other relief as the court may deem appropriate.

## COUNT IV
## WRONGFUL DEATH
## PLAINTIFF v. ALL DEFENDANTS

219.    Plaintiffs hereby incorporates the above paragraphs 1 through 218 above as if same were fully set forth herein.

220.    Plaintiffs, Individually and as Administratrices of the Estate of Barton Lewis Seltman, deceased, brings this action on behalf of the decedent's next of kin/statutory beneficiaries against Defendants for Wrongful Death.

221.    Barton Seltmann is survived by his three adult children, grandchildren and great grandchildren.

222.    By reason of the death of Barton Seltmann, his beneficiaries have in the past and will in the future continue to suffer great pecuniary loss, including but not limited to, loss of support, loss of aid, loss of services, loss of companionship, loss of consortium, loss of comfort, loss of counseling and loss of guidance.

223.    As a direct and proximate result of the foregoing decedent, Barton Seltmann's Wrongful Death beneficiaries incurred or have been caused to incur and pay large and various expenses for medical treatment, hospital care, and medicine rendered to decedent until the time of his death and to incur various funeral, burial, and estate and Administration expenses for which Plaintiff is entitled to compensation.

224.    Plaintiffs, Individually and as Administratrices of the Estate of Barton Seltmann, deceased, brings this action by virtue of the Wrongful Death Act, 42 Pa.C.S.A. §8301, and Pa.R.Civ.P. 2022, and claims all benefits and recoverable damages under the Wrongful Death Act on behalf of all other persons entitled to recover under law.

WHEREFORE Plaintiffs hereby demand judgment against the above named individual Defendants, jointly and severally for compensatory and punitive damages in excess of the jurisdictional limit of $150,000.00 plus interest, costs, attorney fees and such other relief as the court may deem appropriate.

## COUNT V
## SURVIVAL ACT
## PLAINTIFFs v. ALL DEFENDANTS

225.    Plaintiff hereby incorporates the above paragraphs 1 through 224 above as if same were fully set forth herein.

226.    Plaintiffs claim on behalf of the Estate of Barton Seltmann all damages suffered by the Estate by reason of the death of Barton Seltmann, including without limiting the generality of the following: the severe injuries to Barton Seltmann which resulted in his tragic death; the anxiety, horror, fear of impending death, mental disturbance, pain, suffering and other intangible losses which Barton Seltmann suffered prior to his death; the loss of future earning capacity suffered by Barton Seltmann from the date of his death until the time in the future that he would have lived has he not died as a result of the injuries he sustained by the reason of the carelessness, negligence and recklessness of Defendants.

227.    Plaintiff brings this action on behalf of the Estate of Barton Seltmann, by virtue of the Survival Act, 42 Pa.C.S.A §8302, and claims all benefits of the Survival Act on behalf of Barton Seltmann's Estate, and other persons entitled to recover under law.

WHEREFORE Plaintiffs hereby demand judgment against the above named individual Defendants, jointly and severally for compensatory and punitive damages in excess of the

jurisdictional limit of $150,000.00 plus interest, costs, attorney fees and such other relief as the court may deem appropriate.

Respectfully submitted,

*/s/ Patrick T. Duffy*

_____

PATRICK T. DUFFY, ESQUIRE

Dated: November 29, 2025

## DEMAND FOR JURY TRIAL

In accordance with the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury as to all counts and issues raised herein.

DUFFY TRIAL, P.C.

*/s/ Patrick T. Duffy*
Patrick T. Duffy, Esquire
100 Regency Drive
Audubon, PA 19403
(484) 250-4654
(610) 630-0210 fax
Patrick@DuffyTrial.com

Dated: November 29, 2025

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| VICKI YACULAK AND HOLLY LEE, | : | |
| ADMINISTRATRICES OF THE ESTATE OF | : | |
| BARTON LEWIS SELTMANN | : | |
| | : | |
| Plaintiff, | : | Civil Action No. |
| v. | : | |
| | : | |
| MONTGOMERY COUNTY, PENNSYLVANIA, et al. | : | |

**Certificate of Merit as to Matthew Kavalek, MD**

I, Patrick T. Duffy, Esquire, certify that:

☒ an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

☐ the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

☐ expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

DUFFY TRIAL, P.C.

*/s/ Patrick T. Duffy*
Patrick T. Duffy, Esquire
100 Regency Drive
Audubon, PA 19403
(484) 250-4654
(610) 630-0210 fax
Patrick@DuffyTrial.com

Dated: November 29, 2025

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VICKI YACULAK AND HOLLY LEE,** | : | |
| **ADMINISTRATRICES OF THE ESTATE OF** | : | |
| **BARTON LEWIS SELTMANN** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action No.** |
| **v.** | : | |
| | : | |
| **MONTGOMERY COUNTY, PENNSYLVANIA, et al.** | : | |

**Certificate of Merit as to Hani Zaki, MD**

I, Patrick T. Duffy, Esquire, certify that:

☒   an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

☐ the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

☐ expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

**DUFFY TRIAL, P.C.**

*/s/ Patrick T. Duffy*
Patrick T. Duffy, Esquire
100 Regency Drive
Audubon, PA 19403
(484) 250-4654
(610) 630-0210 fax
Patrick@DuffyTrial.com

Dated: November 29, 2025

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **VICKI YACULAK AND HOLLY LEE,** : | |
| **ADMINISTRATRICES OF THE ESTATE OF** : | |
| **BARTON LEWIS SELTMANN** : | |
| : | |
| **Plaintiff,** : | **Civil Action No.** |
| **v.** : | |
| : | |
| **MONTGOMERY COUNTY, PENNSYLVANIA, et al.** : | |

**Certificate of Merit as to Angela Baker, PA-C**

I, Patrick T. Duffy, Esquire, certify that:

☒    an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

☐ the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

☐ expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

**DUFFY TRIAL, P.C.**

*/s/ Patrick T. Duffy*
Patrick T. Duffy, Esquire
100 Regency Drive
Audubon, PA 19403
(484) 250-4654
(610) 630-0210 fax
Patrick@DuffyTrial.com

Dated: November 29, 2025

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VICKI YACULAK AND HOLLY LEE,** | : | |
| **ADMINISTRATRICES OF THE ESTATE OF** | : | |
| **BARTON LEWIS SELTMANN** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action No.** |
| **v.** | : | |
| | : | |
| **MONTGOMERY COUNTY, PENNSYLVANIA, et al.** | : | |

**Certificate of Merit as to Robert Fink, PMHNP**

I, Patrick T. Duffy, Esquire, certify that:

☒  an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

☐ the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

☐ expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

**DUFFY TRIAL, P.C.**

*/s/ Patrick T. Duffy*
Patrick T. Duffy, Esquire
100 Regency Drive
Audubon, PA 19403
(484) 250-4654
(610) 630-0210 fax
Patrick@DuffyTrial.com

Dated: November 29, 2025

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VICKI YACULAK AND HOLLY LEE,** | : | |
| **ADMINISTRATRICES OF THE ESTATE OF** | : | |
| **BARTON LEWIS SELTMANN** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action No.** |
| **v.** | : | |
| | : | |
| **MONTGOMERY COUNTY, PENNSYLVANIA, et al.** | : | |

**Certificate of Merit as to Jena Meck, LSW**

I, Patrick T. Duffy, Esquire, certify that:

☒    an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

☐ the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

☐ expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

**DUFFY TRIAL, P.C.**

*/s/ Patrick T. Duffy*
Patrick T. Duffy, Esquire
100 Regency Drive
Audubon, PA 19403
(484) 250-4654
(610) 630-0210 fax
Patrick@DuffyTrial.com

Dated: November 29, 2025

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **VICKI YACULAK AND HOLLY LEE,** | : | |
| **ADMINISTRATRICES OF THE ESTATE OF** | : | |
| **BARTON LEWIS SELTMANN** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action No.** |
| **v.** | : | |
| | : | |
| **MONTGOMERY COUNTY, PENNSYLVANIA, et al.** | : | |

### Certificate of Merit as to Jaime Butcher, LSW

I, Patrick T. Duffy, Esquire, certify that:

☒ an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

☐ the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

☐ expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

**DUFFY TRIAL, P.C.**

*/s/ Patrick T. Duffy*
Patrick T. Duffy, Esquire
100 Regency Drive
Audubon, PA 19403
(484) 250-4654
(610) 630-0210 fax
Patrick@DuffyTrial.com

Dated: November 29, 2025

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VICKI YACULAK AND HOLLY LEE,** | : | |
| **ADMINISTRATRICES OF THE ESTATE OF** | : | |
| **BARTON LEWIS SELTMANN** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action No.** |
| **v.** | : | |
| | : | |
| **MONTGOMERY COUNTY, PENNSYLVANIA, et al.** | : | |

**Certificate of Merit as to Sophia Drennen, LSW**

I, Patrick T. Duffy, Esquire, certify that:

☒ an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

☐ the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

☐ expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

**DUFFY TRIAL, P.C.**

*/s/ Patrick T. Duffy*
Patrick T. Duffy, Esquire
100 Regency Drive
Audubon, PA 19403
(484) 250-4654
(610) 630-0210 fax
Patrick@DuffyTrial.com

Dated: November 29, 2025

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VICKI YACULAK AND HOLLY LEE,** | : | |
| **ADMINISTRATRICES OF THE ESTATE OF** | : | |
| **BARTON LEWIS SELTMANN** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action No.** |
| **v.** | : | |
| | : | |
| **MONTGOMERY COUNTY, PENNSYLVANIA, et al.** | : | |

**Certificate of Merit as to Jennifer Papp, LSW**

I, Patrick T. Duffy, Esquire, certify that:

☒    an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

☐ the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

☐ expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

**DUFFY TRIAL, P.C.**

*/s/ Patrick T. Duffy*
Patrick T. Duffy, Esquire
100 Regency Drive
Audubon, PA 19403
(484) 250-4654
(610) 630-0210 fax
Patrick@DuffyTrial.com

Dated: November 29, 2025

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VICKI YACULAK AND HOLLY LEE,** | : | |
| **ADMINISTRATRICES OF THE ESTATE OF** | : | |
| **BARTON LEWIS SELTMANN** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action No.** |
| **v.** | : | |
| | : | |
| **MONTGOMERY COUNTY, PENNSYLVANIA, et al.** | : | |

**Certificate of Merit as to Jacquline Lovell, MHC**

I, Patrick T. Duffy, Esquire, certify that:

☒　an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

☐ the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

☐ expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

**DUFFY TRIAL, P.C.**

*/s/ Patrick T. Duffy*
Patrick T. Duffy, Esquire
100 Regency Drive
Audubon, PA 19403
(484) 250-4654
(610) 630-0210 fax
Patrick@DuffyTrial.com

Dated: November 29, 2025

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VICKI YACULAK AND HOLLY LEE,** | : | |
| **ADMINISTRATRICES OF THE ESTATE OF** | : | |
| **BARTON LEWIS SELTMANN** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action No.** |
| **v.** | : | |
| | : | |
| **MONTGOMERY COUNTY, PENNSYLVANIA, et al.** | : | |

**Certificate of Merit as to Kristin Springman, RN**

I, Patrick T. Duffy, Esquire, certify that:

☒ an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

☐ the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

☐ expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

**DUFFY TRIAL, P.C.**

*/s/ Patrick T. Duffy*
Patrick T. Duffy, Esquire
100 Regency Drive
Audubon, PA 19403
(484) 250-4654
(610) 630-0210 fax
Patrick@DuffyTrial.com

Dated: November 29, 2025

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **VICKI YACULAK AND HOLLY LEE,** : | |
| **ADMINISTRATRICES OF THE ESTATE OF** : | |
| **BARTON LEWIS SELTMANN** : | |
| : | |
| **Plaintiff,** : | **Civil Action No.** |
| **v.** : | |
| : | |
| **MONTGOMERY COUNTY, PENNSYLVANIA, et al.** : | |

**Certificate of Merit as to Tamika Booker, RN**

I, Patrick T. Duffy, Esquire, certify that:

☒   an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

☐ the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

☐ expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

**DUFFY TRIAL, P.C.**

*/s/ Patrick T. Duffy*
Patrick T. Duffy, Esquire
100 Regency Drive
Audubon, PA 19403
(484) 250-4654
(610) 630-0210 fax
Patrick@DuffyTrial.com

Dated: November 29, 2025

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **VICKI YACULAK AND HOLLY LEE,** | : |
| **ADMINISTRATRICES OF THE ESTATE OF** | : |
| **BARTON LEWIS SELTMANN** | : |
| | : |
| **Plaintiff,** | :    **Civil Action No.** |
| **v.** | : |
| | : |
| **MONTGOMERY COUNTY, PENNSYLVANIA, et al.** | : |

**Certificate of Merit as to Donnalee Curtis, LPN**

I, Patrick T. Duffy, Esquire, certify that:

☒    an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

☐ the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

☐ expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

**DUFFY TRIAL, P.C.**

*/s/ Patrick T. Duffy*
Patrick T. Duffy, Esquire
100 Regency Drive
Audubon, PA 19403
(484) 250-4654
(610) 630-0210 fax
Patrick@DuffyTrial.com

Dated: November 29, 2025

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **VICKI YACULAK AND HOLLY LEE,** : | |
| **ADMINISTRATRICES OF THE ESTATE OF** : | |
| **BARTON LEWIS SELTMANN** : | |
| : | |
| **Plaintiff,** : | **Civil Action No.** |
| **v.** : | |
| : | |
| **MONTGOMERY COUNTY, PENNSYLVANIA, et al.** : | |

**Certificate of Merit as to Jasmin Nelson, LPN**

I, Patrick T. Duffy, Esquire, certify that:

☒ an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

☐ the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

☐ expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

**DUFFY TRIAL, P.C.**

*/s/ Patrick T. Duffy*
Patrick T. Duffy, Esquire
100 Regency Drive
Audubon, PA 19403
(484) 250-4654
(610) 630-0210 fax
Patrick@DuffyTrial.com

Dated: November 29, 2025

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | | |
|---|---|---|
| **VICKI YACULAK AND HOLLY LEE,** | : | |
| **ADMINISTRATRICES OF THE ESTATE OF** | : | |
| **BARTON LEWIS SELTMANN** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action No.** |
| **v.** | : | |
| | : | |
| **MONTGOMERY COUNTY, PENNSYLVANIA, et al.** | : | |

_____

**Certificate of Merit as to Jennifer Squire, LPN**

I, Patrick T. Duffy, Esquire, certify that:

☒  an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

☐ the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

☐ expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

**DUFFY TRIAL, P.C.**

_/s/ Patrick T. Duffy_____
Patrick T. Duffy, Esquire
100 Regency Drive
Audubon, PA 19403
(484) 250-4654
(610) 630-0210 fax
Patrick@DuffyTrial.com

Dated: November 29, 2025

62

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **VICKI YACULAK AND HOLLY LEE,** | : |
| **ADMINISTRATRICES OF THE ESTATE OF** | : |
| **BARTON LEWIS SELTMANN** | : |
| | : |
| **Plaintiff,** | :            **Civil Action No.** |
| **v.** | : |
| | : |
| **MONTGOMERY COUNTY, PENNSYLVANIA, et al.** | : |

**Certificate of Merit as to Thomas Reece, LPN**

I, Patrick T. Duffy, Esquire, certify that:

☒   an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

☐ the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

☐ expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

**DUFFY TRIAL, P.C.**

*/s/ Patrick T. Duffy*
Patrick T. Duffy, Esquire
100 Regency Drive
Audubon, PA 19403
(484) 250-4654
(610) 630-0210 fax
Patrick@DuffyTrial.com

Dated: November 29, 2025

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VICKI YACULAK AND HOLLY LEE,** | : | |
| **ADMINISTRATRICES OF THE ESTATE OF** | : | |
| **BARTON LEWIS SELTMANN** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action No.** |
| **v.** | : | |
| | : | |
| **MONTGOMERY COUNTY, PENNSYLVANIA, et al.** | : | |

**Certificate of Merit as to PrimeCare Medical, Inc.**

I, Patrick T. Duffy, Esquire, certify that:

☒  an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

☒  the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

☐ expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

**DUFFY TRIAL, P.C.**

*/s/ Patrick T. Duffy*
Patrick T. Duffy, Esquire
100 Regency Drive
Audubon, PA 19403
(484) 250-4654
Patrick@DuffyTrial.com

Dated: November 29, 2025

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VICKI YACULAK AND HOLLY LEE,** | : | |
| **ADMINISTRATRICES OF THE ESTATE OF** | : | |
| **BARTON LEWIS SELTMANN** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action No.** |
| **v.** | : | |
| | : | |
| **MONTGOMERY COUNTY, PENNSYLVANIA, et al.** | : | |

**Certificate of Merit as to Creative Health Services**

I, Patrick T. Duffy, Esquire, certify that:

☒   an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

☒   the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

☐ expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

**DUFFY TRIAL, P.C.**

*/s/ Patrick T. Duffy*
Patrick T. Duffy, Esquire
100 Regency Drive
Audubon, PA 19403
(484) 250-4654
Patrick@DuffyTrial.com

Dated: November 29, 2025

65